UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUKE WEINSTEIN                    :
                                  :
                                  :
                                  :
v.                                :   CIV. NO. 3:11CV1906 (WWE)
                                  :
UNIVERSITY OF CONNECTICUT and :
P. CHRISTOPHER EARLEY             :
                                  :
                                  :

RULING ON DEFENDANT EARLEY'S MOTION FOR PROTECTIVE ORDER

The Plaintiff, Luke Weinstein, formerly employed as the
Director of Innovation Accelerator and Assistant Professor in
Residence at the University of Connecticut, brings an action
against the University of Connecticut ("UConn") and its former
Dean of the School of Business, P. Christopher Earley, alleging
that Earley retaliated against plaintiff because plaintiff
resisted changes to the Innovation Accelerator program that
would violate state and federal laws applicable to the payment
of wages and workers' compensation benefits to students enrolled
in the program. [Doc. #31 at 1].

Plaintiff claims defendants violated his free speech rights
protected under 42 U.S.C. §1983, and Connecticut General
Statutes §31-51q, and §31-51m. Plaintiff also alleges that
defendant Earley intentionally interfered with plaintiff's

1

advantageous employment opportunity with UConn by falsely claiming that the reappointment procedure he was applying to plaintiff was dictated by the Office of the Provost.  Plaintiff alleges that Earley first declined to reappoint plaintiff to the Director position in July 2010, and then terminated plaintiff's employment the following year in May 2011.  [Doc. #31 at 1-2].

Plaintiff contends that at the time Earley was retaliating against plaintiff and others who resisted the Dean's initiatives, Earley was also rewarding those who supported him.  [Doc. #31 at 2].  Plaintiff represents that his investigation has identified certain individuals who were handsomely rewarded by Dean Earley in the immediate time period prior to Earley's departure from UConn, at a time that he was seeking favorable recommendations to support his employment application at Purdue University. [Doc. #31 at 2].

Plaintiff has served subpoenas on Dr. Timothy D. Sands, Office of the Provost at Purdue University; and Luis Lewin, Vice President for Human Resources at Purdue University, seeking:

> Copies of all reference and/or recommendation letters received from any UConn faculty or staff member in support of Dr. Earley's application for Dean of the Krannert School of Business, including any notes taken by any Purdue Dean Selection  Committee members with respect to telephone conversations with any UConn faculty and/or staff member regarding Dr. Earley's application to Purdue.

[Doc. #25].

Before the Court is defendant P. Christopher Earley's Motion for Protective Order [Doc. #25], seeking Court intervention to prevent enforcement of the two subpoenas issued to Purdue University, where Mr. Earley has served as Dean of the business school since November 2011. [Doc. #25]. Plaintiff argues that (1) defendant does not have standing to quash the subpoena served on Purdue University; and (2) defendant has not made out individualized showing of good cause sufficient to establish the right to a protective order.

A telephone conference was held on May 9, 2012, in an effort to resolve the motion. At that time, the Court reserved ruling on the motion and ordered plaintiff to propound interrogatories seeking more specific information. [Doc. #49].

Plaintiff served the following Interrogatories and Document Requests dated May 14, 2012, on defendant Earley.

Interrogatory No. 1: Please identify each and every person, including but not limited to staff and faculty, or other person associated with UCONN that you told Purdue University to contact regarding possible employment at Purdue University.

Interrogatory No. 2: Please identify each and every person including but not limited to staff and faculty, or other person associated with UCONN, who you solicited to provide a recommendation for employment at Purdue University.

Document Request No. 1: Please produce a copy of all recommendation letters from the individuals identified in response to the foregoing interrogatories.

Document Request No. 2:  Please produce all documents that concern Defendant's efforts to obtain employment at Purdue University.

Document Request No. 3:  Please produce all documents that concern Defendant's communication with Purdue University related to recommendations for employment.

By e-mail dated May 30, 2012, defendants' counsel stated, presumably in response to Document Request No. 1, that "Mr. Earley is unaware of any recommendation letters provided on his behalf to Purdue by anyone at UConn."  Upon review, the Court finds that plaintiff's May 14, 2012 Interrogatories and Document Requests are proper under Fed. R. Civ. P. 26.  Accordingly, defendant Earley will provide responses to plaintiff's May 14, 2012, interrogatories and requests for production within fourteen days. D. Conn. L. Civ. R. 37(d).

  A. STANDING

     Plaintiff argues defendant "do[es] not have standing as a recipient of the subpoena and ha[s] not established standing based on a claim of privilege associated with the letters of reference and notes of the search committee."  [Doc. #31 at 4].

     Pursuant to Rule 45, any party may serve a subpoena commanding a nonparty "to attend and testify' or to "produce designated documents."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Any such subpoena is subject to the relevance requirements set forth

in Rule 26(a).  See Fed. R. Civ. P. 45 Advisory Committee Notes

to 1970 Amendment ("the scope of discovery through a subpoena is

the same as that applicable to Rule 34 and the other discovery

rules"). Indeed, "[a]lthough a subpoena may be quashed if it

calls for clearly irrelevant matter, the district judge need not

pass on the admissibility of the documents sought in advance of

trial nor quash a subpoena demanding their production if there

is any ground on which they might be relevant."  9a Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 2459

(3d ed. 2008).

     Federal Rule of Civil Procedure 45(c)(3)(A) states that,

"[o]n timely motion, the court by which a subpoena was issued

shall quash or modify the subpoena if it . . . (iii) requires

disclosure of privileged or other protected matter and no

exception or waiver applies."  Fed. R. Civ. P. 45(c)(3)(A).

     "Ordinarily, a party does not have standing to move to

quash a subpoena served on a third party. Rather, only the

person or entity to whom a subpoena is directed has standing to

file a motion to quash."  Jacobs v. Connecticut Community

Technical Colleges, 258 F.R.D. 192, 194-95 (D. Conn. 2009)

(citations omitted); 9a Federal Practice and Procedure § 2463.1

("A motion to quash, or for a protective order, should be made

by the person from whom the documents, things or electronically

stored information are requested."). "Numerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena." 9a Federal Practice and Procedure § 2463.1; Lanford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); see Jacobs, 258 F.R.D. at 195 (recognizing "the "personal privacy right and privilege with respect to the information contained in his psychiatric and mental health records."); Greene v. Philadelphia Housing Authority, 789 F. Supp. 2d 582, 586 (E.D. Pa. 2011) (finding party has standing "to quash based on claims of [attorney-client or work product] privilege related to the documents being sought.") (citations omitted); Fenstermacher v. Moreno, No. 1:08-cv-01447-SKO PC, 2010 WL 5071042, * 3 (E.D. Cal. Dec. 7, 2010) (finding party has standing to quash documents containing medical and mental health information); EEOC v. 704 HTL Operating, LLC, Civil No. 11-845 BB/LFG, 2012 WL 1216142, *2 (D.N.M. Dec. 3, 2012) (finding standing to assert privilege or privacy interests relating to subpoenas seeking to salary information, personnel records and medical information."); Gruitron v. Wells Fargo Bank, N.A., No. C 10-3461 CW (MEJ), 2011 WL 4345191, *1 (N.D. Cal. Sept. 13,

2011)(recognizing privacy interest in personnel records including applications for employment and resumes). "The decision whether to quash, modify, or condition a subpoena is within the district court's discretion." 9a <u>Federal Practice and Procedure</u> § 2463.1.

Defendant Earley contends that he has standing to challenge the subpoenas based on a "personal right" with respect to the documents contained in Purdue's files relating to reference and/or recommendation letters received from UConn faculty. Defendant Earley also suggests a "personal right" with respect to staff member notes taken by any Purdue Dean Selection Committee Members regarding telephone conversations with any UConn faculty and/or staff member about Dr. Earley's application for employment. Earley maintains that "compliance with plaintiff's subpoenas would result in concrete harm to [him] in his present employment as Dean at Purdue and in his nascent career as a leader in higher education." [Doc. #43 at 2]. The Court finds that Earley has a personal right with respect to the information contained in his employment records and has standing to challenge the subpoenas on this basis. <u>Chamberlain v. Farmington Sav. Bank</u>, Civil No. 3:06CV01437 (CFD)(TPS), 2007 WL 2786421, (D. Conn. Sept. 25, 2007) (finding plaintiff "clearly has right with respect to the information contained in his employment records" and has standing to challenge the subpoenas

on the basis moving for a protective order pursuant to Rule 26);
Gruitron, 2011 WL 4345191, *1 (recognizing privacy interest in
personnel records including applications for employment and
resumes).

B.  PROTECTIVE ORDER

Earley argues several bases for entry of a protective order.
He first argues that "[t]here is no need for the Plaintiff to
subpoena documents from Purdue University as they could be
sought from Defendant Earley directly through the discovery
process and there is no need for these documents at this time. .
. ." [Doc. #25 at 1].  Defendant next argues that the subpoenas
seek irrelevant documents, as his "employment with Purdue
University began in August 2011 and is not related to the
instant case." [Doc. #25 at 1].  Last, Earley argues that the
subpoenas would result in concrete harm to his reputation and
employment prospects, and should therefore be precluded.  [Doc.
#25 at 1].

i.  Necessity of Subpoenas

Defendant argues that the subpoenas are unnecessary as the
subpoenaed documents could be sought from him directly through
the discovery process.  As set forth above, plaintiff served
defendant Earley on May 14, 2012, with interrogatories and

requests for production. By e-mail dated May 30, 2012, defendants' counsel stated that she "asked Dean Earley to provide: a listing of any subordinates whose names he provided to Purdue University as references or who he asked to provide a recommendation on his behalf to Purdue." To date Earley has produced no documents. Accordingly, this first argument fails.

   ii.  Relevance of Subpoenas

   Defendant next argues that the subpoenas seek irrelevant documents, as his "employment with Purdue University began in August 2011 and is not related to the instant case." [Doc. #25 at 1].

   A party may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1).  The information need not be admissible at trial; it need only be reasonably calculated to lead to the discovery of admissible evidence. (Id.)  "Relevance" under Fed. R. Civ. P. 26(b)(1) has been defined broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  "Although a subpoena may be quashed if it calls for clearly irrelevant matter, the district judge need not pass on the admissibility of the documents sought

in advance of trial nor quash a subpoena demanding their production if there is _any_ ground on which they might be relevant."  9a Federal Practice and Procedure § 2459 (emphasis added).  This scope of permissible discovery is clearly quite broad. Marchello v. Chase Manhattan Auto Finance Corp., 219 F.R.D. 217, 218 (D. Conn. 2004)(citation omitted).

The causation element of a retaliation claim "can be established by showing that the retaliatory action was close in time to the protected activity; that other similarly situated employees were treated differently; or with direct proof of retaliatory animus." Uddin v. City of New York, 427 F. Supp. 2d 414, 432 (S.D.N.Y. 2006)(citing, Sumner v. U.S. Postal Serv., 899 F.2d 203, 210 (2d Cir. 1990) and DeCinto v. Westchester County Med. Ctr., 821 F2d 111, 115 (2d Cir. 1987)).

Plaintiff contends that defendant Earley rewarded those subordinates that "supported him despite his controversial violations of policy and the law" [doc. #31 at 2], and plaintiff seeks to inquire further into the "rewards for recommendations" theory "[i]n order to discover relevant, additional evidence to support this contention." [doc. #31 at 2].  Here, UConn faculty allegedly rewarded by Earley were similarly situated to the plaintiff, in that all were Earley's subordinates.  Thus, the letters of recommendation might reasonably lead to discoverable

information, as the letters undoubtedly contain the identity of the recommender and possible insight into the relationships between the defendant and his recommenders which, when compared to defendant's relationship with plaintiff, would be plainly relevant to the claims at issue.

As set forth above, the Court finds that plaintiff has articulated a reasonable nexus between the information sought and the claims alleged to establish the relevance of the information sought.

iii. Concrete Harm from Subpoenas

Finally, defendant argues that plaintiff's "actions serve only to embarrass and harass [him] and have a negative impact on his recent employment which has nothing to do with his employment at the University of Connecticut."  [doc. #25 at 1]. Put another way, Earley contends that "there is ample reason for this Court to conclude that requiring Purdue to comply with Plaintiff's subpoena's would result in concrete harm to Mr. Earley in his present employment as Dean at Purdue and in his nascent career as a leader in higher education." [Doc. #43 at 2; see also, doc. #43 at 10] (arguing that executing the subpoenas "would have grave consequences for [his] tenure at Purdue and his professional future").

Rule 26(c) of the Federal Rules of Civil Procedure reads, in pertinent part, that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden " during the discovery process. Fed. R. Civ. P. 26(c)(1).  Further,

> [w]hether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed". . .The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court.

Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)(citations omitted).

The burden of showing good cause for the issuance of a Protective Order falls on the party seeking the order.  Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011)(internal citation omitted).  The party must set forth "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" to establish good cause for protection under Rule 26(c).  Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 356 (D. Conn. 2006)(citations omitted).  In other words, good cause "exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order."  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). Moreover, "[b]road allegations of harm,

12

unsubstantiated by specific examples or articulated reasoning," are insufficient for a good cause showing. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)(quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)).

In support of the contention that enforcing the subpoenas would cause him concrete and serious injury, defendant provided a declaration dated May 2, 2012, stating that only Purdue Provost Timothy Sands and Purdue's legal representation are aware of the subpoenas served on Purdue.  [Earley Decl., doc. #47 at ¶4].  Earley contends that if Purdue officials discover that he is named as a defendant in this litigation, his reputation may be harmed, and his current and future employment possibilities may be jeopardized. Id. at 10.  Defendant maintains that those individuals who will need to provide the documents demanded by the subpoenas are the same individuals who are responsible for deciding whether or not to renew the defendant's current employment contract.  Id. at 3.  Defendant also proposes that he is at a critical juncture in his career, and the fallout surrounding the execution of these subpoenas may limit his ability to obtain future employment elsewhere, as his "professional fate depends on his ability to gain, and maintain, the trust and confidence of various important constituencies at Purdue."  [Doc. #43 at 9].

13

Plaintiff, however, submits that defendant's "[c]onclusory statements to the effect that [he] is going to be embarrassed or that seeking information is harassing unsupported by particular and specific demonstrations of fact" fails to satisfy the standard of good cause under Rule 26(c).  [Doc. #31 at 7]. Indeed, defendant can only speculate about the potential impact of the execution of the subpoenas[1].  Such generalized and speculative suggestions of harm do not constitute good cause for issuance of a protective order under Rule 26(c). United States v. Int'l Bus. Machines Corp., 70 F.R.D. 700, 702 (S.D.N.Y. 1976)(Where IBM's "conclusory assertion that sorting and designating [subpoenaed documents] would be . . . a source of continuous controversy assuredly does not demonstrate good cause for the blanket protection it seeks."); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)(citation omitted)(Stating that "a protective order will not issue upon the broad allegation that disclosure will result in injury to reputation."); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 484

---

[1] Defendant provided a sworn declaration stating, among other things,  that enforcement of the subpoena "would negatively impact" his career at Purdue and anywhere else and "invariably would damage [his] reputation." Mr. Earley stated he was "especially concerned" about the effects the subpoena would have on Purdue alumni and students and their negative reaction or loss of confidence. He further stated that he "believed" that "if the subpoenas lead to a negative outcome" he will lose his position and "the result would be devastating to [his] career" and any future employment.  [Earley Decl., doc. #74].

(3d Cir. 1995)("General allegations of injury to reputation and client relationships or embarrassment that may result from dissemination of privileged documents is insufficient to justify judicial endorsement of an umbrella confidentiality agreement.")

1. Reference and/or Recommendation Letters

Defendant's Motion for a Protective Order as to "[c]opies of all reference and/or recommendation letters received from an [sic] UConn faculty or staff member in support of Dr. Earley's application for Dean of the Krannert School of Business" **[doc. #25]** is **DENIED.** Purdue University will provide the reference/recommendation letters to plaintiff, subject to a Confidentiality Order.

2. Purdue Dean Selection Committee Members' Notes

Defendant's Motion for Protective Order as to "any notes taken by any Purdue Dean Selection Committee members with respect to telephone conversations with any UConn faculty and/or staff member regarding Dr. Earley's application to Purdue" is **GRANTED** on this record. This subpoena request may be renewed after plaintiff reviews the answers to interrogatory responses and requests for production and the documents provided from Purdue. Plaintiff will request a telephone status conference if he seeks to renew this subpoena request only after conferring with opposing counsel regarding his specific reasons for seeking

further information from Purdue.  Plaintiff will need to make a
showing that contacting Selection Committee members for notes is
warranted on the then current record.

<u>CONCLUSION</u>

Accordingly, defendant P. Christopher Earley's Motion for
Protective Order **[doc. #25]** is **GRANTED** in part and **DENIED** in
accordance with this ruling.

This is not a recommended ruling.  This is a discovery
ruling and order which is reviewable pursuant to the "clearly
erroneous" statutory standard of review.  28 U.S.C. § 636
(b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of
the Local Rules for United States Magistrate Judges.  As such,
it is an order of the Court unless reversed or modified by the
district judge upon motion timely made.

SO ORDERED at Bridgeport this 15th day of August 2012.

s/Holly B. Fitzsimmons

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE