```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

LUKE WEINSTEIN                  :
                                :
                                :
                                :
v.                              :   CIV. NO. 3:11CV1906 (WWE)
                                :
UNIVERSITY OF CONNECTICUT and   :
P. CHRISTOPHER EARLEY           :
                                :
                                :
```

**RULING ON CROSS MOTION TO COMPEL/MOTION FOR PROTECTIVE ORDER [##60, 70]**

The plaintiff, Luke Weinstein, formerly employed as the Director of Innovation Accelerator and Assistant Professor in Residence at the University of Connecticut, brings an action against the University ("UConn") and its former Dean of the School of Business, P. Christopher Earley, alleging that Earley retaliated against plaintiff because plaintiff resisted changes to the Innovation Accelerator program that would violate state and federal laws applicable to the payment of wages and workers' compensation benefits to students enrolled in the program. [Doc. #31 at 1].

Plaintiff claims defendants violated his free speech rights protected under 42 U.S.C. §1983, and Connecticut General Statutes §31-51q, and §31-51m. Plaintiff also alleges that defendant Earley intentionally interfered with plaintiff's advantageous employment opportunity with UConn by falsely claiming that the reappointment procedure he was applying to

1

plaintiff was dictated by the Office of the Provost.  Plaintiff alleges that Earley first declined to reappoint plaintiff to the Director position in July 2010, and then terminated plaintiff's employment the following year, in May 2011.  [Doc. #31 at 1-2].

**Pending Cross Motions**

Pending is plaintiff's Motion to Compel production of documents withheld by defendants on the basis of the attorney-client privilege, work product privilege and/or deliberative process privilege. **[Doc. #60].**  Plaintiff served his first set of written discovery requests on defendant UConn on January 25, 2012, and a second set of requests on March 14, 2012.

Defendants claim that three of the documents identified in the privilege log are protected by the deliberative process privilege. The remaining 103 documents are claimed by defendants to be protected by attorney client privilege and/or the work product doctrine.

On February 7, 2013, defendants submitted the unredacted documents for the Court's <u>in camera</u> review. [Doc. #71].

Defendants filed a Consolidated Motion for Protective Order to prohibit plaintiff's counsel from deposing University of Connecticut's attorney Michael J. Eagen, and a memorandum in opposition to plaintiff's Motion to Compel.

**BACKGROUND FACTS**

Plaintiff commenced his employment as Director of the Innovation Accelerator and Assistant Professor in Residence with UConn on or about January 29, 2007. Plaintiff was initially appointed through August 22, 2008. Plaintiff's appointment was renewed for academic years 2008-09 and 2009-10 under the same terms as his initial appointment. [Doc. #61 at 2]. In the spring of 2010, plaintiff began to question the School of Business' compliance with state and federal laws applicable to the payment of wages and workers' compensation benefits and its compliance with Institutional Review Board ("IRB") rules mandated by the federal government in connection with conduction research. During the spring of 2010, plaintiff spoke to Rachel Rubin, Director of UConn's Office of Ethics, regarding potential violations of state and federal law and regulation. Id. at 3. On or about June 8, 2010, Christopher Early, Dean of the School of Business, announced a change in procedures for the reappointment of Directors in the School of Business. Id. at 3. Following the Dean's announcement, plaintiff was nominated for the position of Director of Innovation Accelerator. Plaintiff was required to submit a formal application for the Director position by noon on June 21, 2010. Plaintiff's application was communicated by email to Dean Earley on July 23, 2010.

By letter dated July 28, 2010, Dean Earley declined to reappoint plaintiff to the position of Director of Innovation Accelerator. Id. at 4.

By letter dated May 20, 2011, Dean Earley informed plaintiff that he would not be reappointed to teach his scheduled entrepreneurial courses in the fall of 2011 and spring of 2012. Id. at 5.

Defendants were first advised of potential litigation in a letter from plaintiff's counsel, dated September 27, 2011, advising them of plaintiff's claims. [Doc. #61 at 20].

**Defendant UConn's Interrogatory Responses**

Defendant UConn's responses to plaintiff's First Set of Interrogatories regarding decisions about plaintiff's employment with UConn and Attorney Michael Eagen's involvement are as follows.

3. *Identify the individual(s) who made the final decision not to reappoint plaintiff to the position of Director of the Innovation program.*

ANSWER: Dean Christopher Earley, Associate Provost Nancy Bull and Associate Dean Lyn Klein.

4. *Identify each and every individual who participated in or approved the decision to not reappoint plaintiff to the Director of Innovation Accelerator program. For each person identified, please explain the nature of each person's role.*

ANSWER: Defendant incorporates its response to Interrogatory #2 as if fully recited herein. The individuals were: Dean Christopher Earley, Associate Provost Nancy Bull and Associate Dean Lyn Klein, Michael Eagen, Esq. and Ralph Urban, AAG.

5. *Please identify the individual or individual(s) who have knowledge of the circumstances, including the factors considered by the Defendant in the decision to not reappoint Plaintiff as Director of Innovation Accelerator program.*

ANSWER: Dean Christopher Earley, Associate Provost Nancy Bull, Associate Dean Lyn Klein, Michal Eagen, Esq., and Ralph Urban, AAG.

13. *Please state whether an attorney or attorneys was/were consulted in connection with Defendant's decision not to reappoint Plaintiff as Director of Innovation Accelerator program and, if so, please provide said attorney's or attorney's name(s) and address(es).*

ANSWER: Notwithstanding the objections and without any waiver, the Defendant responds yes, Michael J. Eagen, Esq., Labor & Employment Specialist, Department of Human Resources, 9 Walters Avenue, Unit 5075, Storrs, CT 06269 and Ralph Urban, Assistant Attorney General University of CT, Office of the Attorney General, 343 Mansfield Road, Storrs, CT 06269.

18. *Please identify each and every change made by Defendant or any of its employees or agents to the procedures for the reappointment of Directors in June 2010. In doing so, please state the reasoning behind each change and who was responsible for making the change.*

ANSWER: Notwithstanding the objections, and without any waiver, the Defendant responds that in consultation with the Provost's office, primarily Vice Provost Nancy Bull, and with input from Rachel Rubin and Attorney Michael Eagen, the School of Business replaced its existing informal practice of consulting with Associate Deans and Department Heads to identify candidates and make selections for Directors/Executive Directors with process in which they were required to actively solicit nominations (including self-nominations) from all eligible faculty for Director/Executive Director positions when those positions opened up at the conclusion of the incumbents' contractual terms. In the new approach, the School of Business used a written solicitation for nominations sent to all eligible faculty and staff members. This solicitation included a brief description of the center and the requirement that all interested parties needed to provide a letter of interest and updated CV by a date certain to the Dean's executive Assistant. (See email dated 6//8/10 1:49 pm from Dean Earley to all School of Business faculty and staff). Nancy Bull and Rachel Rubin expressed to Dean Early that this new approach was needed so that the School of Business's selection process for these positions, which normally entitle the selected candidate to extra compensation, was fair and transparent and more competitive by being open to all members of the School of Business community.

**Attorney Michael J. Eagen's Role at UConn**

Michael J. Eagen is an attorney licensed in Connecticut since 1995. Prior to his employment at UConn, he practiced labor and employment law with a law firm in Hartford and was an

5

Assistant Corporation Counsel for the City of Waterbury. [Eagen Aff. ¶3].

Attorney Eagen states he was hired in 2005 by UConn in a "newly created position as an attorney in the Office of Human Resources and Payroll Services" with the title, "Labor & Employment Specialist/University Staff Professional IV." [Eagen Aff. ¶4]. In 2012, Attorney Eagen became the Director of UConn's Office of Faculty and Staff Labor Relations, a newly created position. [Eagen Aff. ¶5]. He states that he continues to "serve as UConn's counsel for labor and employment, now reporting to UConn's Office of the General Counsel." [Eagen Aff. ¶5]. UConn established an Office of General Counsel in 2012. [Eagen Aff. ¶6]. Prior to the creation of the Office of General Counsel, "all of UConn's in-house attorneys, including myself, reported through a chain of command within the individual units of UConn to which they were assigned." [Eagen Aff. ¶6].

Attorney Eagen avers that at the beginning of his contact with the School of Business regarding Luke Weinstein, he assisted and advised University administrators in processing, investigating and responding to the various labor grievances filed by plaintiff's union, the AAUP. He states he advised UConn officials regarding the requirements of the collective bargaining agreement, UConn policies and procedures, and the applicable state and federal laws and regulations. He stated that, "[i]t was expected that the Plaintiff's complaints and grievances would ultimately result in additional claims and

6

litigation against UConn," [Eagen Aff. ¶12]; that his work on plaintiff's labor grievances included investigating facts, including confidentially gathering information, "in my professional judgment, was relevant," drafting responses to grievances, providing legal counsel to university administrators, and serving as the legal representative of the university in discussion with the union representative. [Eagen Aff. ¶13]. In addition, Attorney Eagen provided "confidential legal counsel" regarding the terms of plaintiff's employment and complaints regarding his role and future at the School of Business and the Accelerators program and the nomination and appointment process for Directors. He also developed confidential work product concerning these issues in the form of notes, drafts and communications "containing my mental impressions, conclusions, opinions or legal theories." [Eagen Aff. ¶14]. In all his dealings with School of Business administrators with regard to plaintiff, Attorney Eagen states he was identified as an attorney representing and advising UConn and its officials. He states that, "my notes and communications . . . were created in connection with confidential legal counsel I provided to the university and/or as work product developed in the anticipation of litigation by plaintiff or pending labor grievance proceedings brought on Plaintiff's behalf." [Eagen Aff. ¶17].

Attorney Eagen represents that he "did not have decision-making authority concerning plaintiff's employment or the policies and decisions at issue in this litigation." [Eagen Aff.

7

¶19]. Rather, Eagen states that decision making authority "resided with UConn's academic chain of command, including, principally, the Dean and other administrators of the School of Business and the Provost of UConn." [Eagen Aff. ¶19].

**Discussion**

   1. **Deposition of Attorney Michael Eagen**

Plaintiff argues that, "[at] all times relevant to this litigation, Mr. Eagen was employed by UConn as a "Labor and Employment Specialist" in UConn's Department of Human Resources" and there is "no evidence that Mr. Eagen was employed or engaged by Defendants in his capacity as an attorney." [Doc. #80 at 8]. Plaintiff contends that all "[c]ommunications to and from Mr. Eagen relating to Plaintiff's employment were made in his capacity as a Human Resources employee, not as an attorney." Id.

Defendants argue that the dispute at the heart of these cross motions is "the distinction between, on the one hand, officers of an institution who have the authority to make decisions for the institution, and, on the other hand, the institution's counsel, who provides legal advice to those decision-makers." [Doc. #70 at 7). In support of their motion, defendants submitted the affidavit of Attorney Michael Eagen, describing his job responsibilities and role as in-house counsel for UConn. [Doc. #70-2, Ex. B].

**Fed. R. Civ. P. 26(c)(1)(A)**

The Federal Rules of Civil Procedure provide that parties may obtain discovery, including by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "[r]elevant information need not be admissible." Fed. R. Civ. P. 26(b)(1). However a district court may limit:

> The frequency or extent of the use of discovery methods otherwise permitted under [the federal] rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

In In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003), the Second Circuit stated that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship."  The Second Circuit suggested several non-exclusive factors that courts should consider when analyzing whether the proposed deposition of an

9

attorney-witness is appropriate.  These considerations include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted."  Id.

The burden rests on the person seeking discovery to "establish adequate reasons to justify production."  Hickman v. Taylor, 329 U.S. 495, 511-12 (1947). Plaintiff argues that Attorney Eagan was not acting in the capacity of an attorney with regard to matter's relating to plaintiff's employment, however, "assuming arguendo that Mr. Eagen was acting as in-house counsel, the prospect that privilege and work product issues may be encountered during a deposition is simply not a valid basis for barring plaintiff from having discovery." [Doc. #80 at 13].

In weighing the Friedman factors, the Court finds that plaintiff has not sustained his burden for deposing Attorney Eagan.  As set forth above, the risk of encountering privilege and work product issues has been established by defendant and it is less burdensome to obtain this discovery from other non-lawyer witnesses identified as decision makers.  Accordingly, the Motion to Quash and for Protective Order **[doc. #70]**

regarding the deposition of Attorney Eagan is **GRANTED**.[1] Defendant's request for an Award of Expenses is **DENIED**.

## 2. In Camera Review [Doc. #60]

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007). The purpose of the privilege is to encourage full and frank communication between attorneys and their clients, and thereby to promote "broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). However, because there is a countervailing public interest in ensuring materials relevant to legal disputes are discoverable, courts construe the attorney-client privilege narrowly, see County of Erie, 473 F.3d at 418, and apply it "only where *necessary* to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976) (emphasis added).

"The party invoking the attorney-client privilege must show (a) a communication between client and counsel; (b) was intended to be and was in fact kept confidential; and (c) was made for the purpose of obtaining or providing legal advice." County of Erie, 473 F.3d at 419. The party invoking the privilege bears the burden of establishing all of the elements of the privilege.

---

[1] On April 18, 2013, the Court ruled that the depositions noticed by plaintiff would go forward at the office of plaintiff's counsel. [Doc. 96]. Accordingly, defendants' request to hold the depositions of defendant Earley and other UConn witnesses is denied in accordance with the Court's April 18, 2013 ruling.

11

See United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997).

While the standard for determining whether a communication is protected by the attorney-client privilege is straightforward, the application of that standard sometimes requires nuance. The line between legal advice and non-legal advice is hazy. In particular, the line between business advice and legal advice is blurry when an attorney work in-house for a corporate client. See County of Erie, 473 F.3d at 419. In the specific context of communications to and from corporate in-house lawyers, courts therefore typically hold that a communication is privileged only if it was generated for the *predominant purpose* of rendering or soliciting legal advice. See id. at 420 & n. 7 (emphasis added) (citing, *inter alia*, 24 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5490 (1986)). In County of Erie, the Second Circuit expounded on the meaning of "predominant purpose":

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks, and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the *predominant purpose* of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it. The predominant purpose of a communication cannot be ascertained by quantification or classification of one

> passage or another; it should be asserted dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.

County of Erie, 473 F.3d at 420-21.

"[I]t is not enough for the party invoking the privilege to show that a communication from corporate personal to in-house counsel communicated factual information that might become relevant to the future rendering of legal advice. Instead, the communication must also either explicitly or implicitly seek specific legal advice about that factual information." Valente v. Lincoln Nat. Corp., No. 3:09CV693 (MRK), 2010 WL3522495, *3 (Sept. 2, 2010).  The Court is mindful that "corporate clients could attempt to hide mountains of otherwise discoverable information behind a veil of secrecy by using in-house legal departments as conduits of otherwise unprivileged information." Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 411 n. 20 (D. Md. 2005); see also Lindley v. Life Investors Ins. Co. of Am., 267 F.R.D. 382, 388-92 (N.D. Okla. 2010). As New York's highest court observed more than two decades ago: "[T]he need to apply [the privilege] cautiously is heightened in the case of corporate staff counsel, lest the *mere participation* of an attorney be used to seal off disclosure." Rosi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 593 (1989) (emphasis added). In sum, it cannot be

13

that *every* e-mail sent to an in-house lawyer is automatically privileged.

Defendants claim that three of the documents identified in the privilege log are protected by the deliberative process privilege. The remaining 103 documents are claimed by defendants to be protected by attorney client privilege and/or the work product doctrine.

With this standard in mind, the Court reviewed the documents in camera; defendant UCONN will produce documents Bates stamp Nos. 2887, 2888.  There are email chains where the most recent email is not substantive (scheduling, etc), but the remainder of the email chain is privileged. In these instances, the Court has not ordered the production of these emails with redactions.

Accordingly, plaintiff's Motion to Compel production of documents withheld by defendants on the basis of attorney client privilege, work product privilege and/or deliberative process privilege **[Doc. #60]** is **GRANTED in part** and **DENIED in part.**

## **CONCLUSION**

As set forth above, plaintiff's Motion to Compel **[Doc. #60]** is **GRANTED in part** and **DENIED in part.** Defendants' Motion for Protective Order **[doc. #70]** is **GRANTED in part and DENIED in part** as set forth in this opinion. Defendant's request for an Award of Expenses **[doc. #70]** is **DENIED.**

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 21st day of May 2013.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE